UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SUNDIATA LANGFORD, | ) | Case No. 1:05 CV 1487 |
| | ) | |
| Petitioner, | ) | Judge Solomon Oliver |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | OF MAGISTRATE JUDGE |
| MARGARET BRADSHAW, | ) | |
| | ) | |
| Warden, | ) | Magistrate Judge James S. Gallas |
| | ) | |

      Petitioner Sundiata Langford was convicted for murder with firearm specification together with two co-defendants and sentenced to 18 years to life on December 7, 2001.[1]  As related in the state appellate decision, the victim was 13-year old Warren Culbreath who was sitting with his teenage friends on the front porch enjoying an August evening.  Gunshots were fired from a nearby house  used by the Rockland gang and the children ran into the house.  Thirteen-year old Warren was however found dead by his stepfather lying on the stairs with a large bullet wound in his back.  A bullet from an AK-47 or M-16 automatic assault rifle had traveled up the boy's back, broken several ribs and crossed two areas of his brain.  Evidence showed that the child would have been paralyzed immediately on impact.  The assault rifle was never recovered.  Langford and his co-defendants claim self-defense because they were firing at a car whose occupants were members of a rival gang, the Bloods, whom they believed, were seeking revenge for the death of one of a Bloods member by the Rockland gang.  See *State v. Langford*, 2003 WL 125069, 2003 - Ohio - 159 (Ohio App. 8 Dist.).  Langford exercised an Ohio App. Rule 4(A) direct appeal; reopening of appeal for

---

[1]On direct appeal Langford's conviction for having a weapon while under a disability was reversed for insufficient evidence. See *State v. Langford*, 2003 WL 125069, 2003 - Ohio - 159 ¶22-28 (Ohio App. 8 Dist.).

1:05 CV 1487                                                          2

ineffective assistance of appellate counsel under Ohio App. Rule 26(B); and a state post-conviction petition under Ohio Rev. Code §2953.21 to challenge his murder conviction in the state courts. See *id.*, appeal not allowed, 99 Ohio St.3d 1411, 788 N.E.2d 647, 2003 - Ohio - 2454 (Table 2003); motion to reopen denied, *State v. Langford*, 2003 WL 21805643, 2003 - Ohio - 4173 (Ohio App. 8 Dist.), appeal not allowed, 100 Ohio St.3d 1487, 798 N.E.2d 1094, 2003 - Ohio - 5992 (Table 2003); post-conviction denied, *State v. Langford*, 2004 WL 1057456, 2004 - Ohio - 2336 (Ohio App. 8 Dist.), appeal not allowed, 103 Ohio St.3d 1465, 815 N.E.2d 679, 2004 Ohio 5036 (Table 2004). Langford thereafter commenced this proceeding *pro se* for federal habeas corpus relief under 28 U.S.C. §2254 raising the following four grounds for relief.

> Ground One: The petitioner was denied the effective assistance of appellate counsel in violation of his Fourteenth Amendment Rights under the United States Constitution and Article I Section 10 of the Ohio Constitution for Counsels failure to raise the issue that appellant was denied the effective assistance of trial counsel for trial counsels failure to request jury instructions on the lesser included offenses of murder.
>
> Ground Two: The petitioner was denied effective assistance of trial counsel for counsels failure to investigate and call a vital defense witness in violation of petitioner's Sixth and Fourteenth Amendment Rights under the United States Constitution, and Article I Section 10 of the Ohio Constitution.
>
> Ground Three: Petitioner was denied Due Process of law in violation of the fifth and Fourteenth Amendments to the United States Constitution and Article I Section 10 of the Ohio Constitution when evidence of Gang Affiliation is presented by the prosecutor over defense objection and is provided to a defendants jury without limiting instructions.

1:05 CV 1487                                                3

>       Ground Four:    Petitioner was denied due process of law in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Article I Section 10 of the Ohio Constitution when the court would not instruct the jury on the lesser included offenses of negligent or reckless homicide.

The first ground was presented in the application to reopen appeal, the second ground was presented in the post-conviction petition, and the third and fourth grounds were presented in the direct appeal as the fourth and fifth assignments of error respectively and as a second and third propositions of law to the Ohio Supreme Court.  The undersigned finds that the state remedies for the foregoing grounds have been exhausted. Langford presented several other issues to the state courts but has not raised them for federal review.

Langford misunderstands the purpose of federal review.  Langford restates arguments based on state and federal law that had been presented in the state courts.  The federal district court sitting in review under §2254 is not a super appellate court.  For purposes of federal collateral review, all claims adjudicated on their merits by state courts are governed by 28 U.S.C. §2254(d)(1) and (2).  A district court has very restricted Congressionally granted powers for review under 28 U.S.C. §2254(d).  See *Williams v. Taylor*, 529 U.S. 362, 402-03, 117 S.Ct. 1495, 146 L.Ed.2d 389 (2000)*;* *Bell v. Cone*, 535 U.S. 685, 122 S.Ct. 1843, 1852, 152 L.Ed.2d 914 (2002).  The extent of permissible federal review of state convictions as set forth as follows in the statute:

>       An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim  - - -

1:05 CV 1487                                              4

> (1) resulted in a decision that was *contrary to*, or involved an *unreasonable application* of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding (emphasis supplied).

The phrases "contrary to" and "unreasonable application" are not the same. *Lockyer v. Andrade*, 538 U.S. 63, 75-76, 123 S.Ct. 1166, 1175, 155 L.Ed.2d 144 (2003). Under the "contrary to" standard of review, the state court's decision is "contrary to" clearly established federal law when it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [this] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Mitchell v. Esparza*, 540 U.S. 12, 15, 124 S.Ct. 7, 10, 157 L.Ed.2d 263 (2003). Under those circumstances the Supreme Court has held that the federal court on habeas review may grant the writ. *Id.* The phrase "clearly established Federal law" refers to holdings, as opposed to *dicta,* of the U.S. Supreme Court at the time of the relevant state court decision. *Lockyer*, 538 U.S. at 71-72, 123 S.Ct. at 1172; *Williams v. Taylor*, 529 U.S. at 412; *Bell v. Cone*, 535 U.S. at 698.

Under the "unreasonable application" standard, "the state court identifies the correct governing legal rule from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413; *Wiggins v. Smith*, 539 U.S. 510, 123 S.Ct. 2527, 2535, 156 L.Ed.2d 471 (2003). This includes both the state court's refusal to extend and

1:05 CV 1487                                              5

its unreasonable extension of existing legal principles from Supreme Court precedent to new contexts. See *Williams*, 529 U.S. at 407.

### *Ground One:*

With respect to the first ground, Langford claims that appellate counsel was ineffective for failing to argue that trial counsel was ineffective for not requesting jury instructions on a lesser included offenses of voluntarily manslaughter or involuntary manslaughter. The state appellate court in ruling on Langford's Ohio appellate R. 26(B) application to reopen appeal found no merit to this ground advancing three reasons: (1) "Langford's trial strategy involved a complete denial of any criminal activity, which resulted in the death of the victim;" (2) the issue was barred by *res judicata* because the issue of trial counsel's effectiveness with respect to defective jury instructions have been raised and found to be without merit in the direct appeal; and (3) the primary reason that this argument was pre-empted by state precedent from *State v. Griffie*, 74 Ohio St.3d 332, 333, 658 N.E.2d 764 (1996), which held that, "[f]ailure to request instructions on lesser-included offenses is a matter of trial strategy and does not establish ineffective assistance of counsel." *Id.*, 2003 WL 21805643 *1.

This state appellate court decision is far more complex than respondent appreciates. First it is a combination of a ruling on the merits and the procedural default of *res judicata*. Secondly, it rests on a state decision which did not apply the applicable federal standard of review, *i.e.*, *State v. Griffie*, which rests upon *State v. Clayton*, 62 Ohio St. 2145, 402 N.E.2d 1189, 16 O.O.3d 35 (1980), *cert. denied*, 449 U.S. 879 (1980). *Griffie* and *Clayton* were decided without consideration

1:05 CV 1487                                                  6

of the federal standard for adjudicating counsel's effectiveness as set out in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and appellate counsel's effectiveness as set out in *Jones v. Barnes*, 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed. 987 (1983). The state decision was grounded on a simple, but no longer appropriate, rule that counsel's decision whether or not to request an instruction on a lesser included offense can be dismissed as a matter of trial strategy. The state appellate court while not relying on *Strickland* and *Jones*, did, nevertheless, acknowledge them as setting the appropriate standards of review. See *State v. Langford*, 2003 WL 2180563 *1.

First, the Supreme Court in *Holland v. Jackson* has instructed the reviewing federal courts in such instances to determine whether the state decision was an unreasonable application of *Strickland* when the state decision recites *Strickland*, but appears to rest on another standard. *Id.* 542 U.S. 934, 542 U.S. 649, 654, 124 S.Ct. 2736, 2738, 159 L.Ed.2d 683 (2004). The benefit of the doubt must be given that the state court knew and followed correct law. *Id.*, 542 U.S. at 655, 124 S.Ct. at 2739.

Second, resolution of this ground under principles of procedural default has been waived by respondent's failure to assert this affirmative defense. See *Trest v. Cain*, 522 U.S. 87, 89, 118 S.Ct. 478, 480, 139 L.Ed.2d 444 (1997); *Gray v. Netherland*, 518 U.S. 152, 166, 116 S.Ct. 2074, 2082, 135 L.Ed.2d 457 (1996) (procedural default is normally a defense which the State is obligated to "raise and preserve" if not to "lose the right to assert the defense thereafter"). Ultimately, though, Langford must show that the state court applied the correct standard in an objectively unreasonable

1:05 CV 1487                                              7

manner.  See *Woodford v. Visciotti*, 537 U.S. 19, 24-25, 123 S.Ct. 357, 154 L.Ed.2d 279, (2002); *Price v. Vincent*, 538 U.S. 634, 640-641, 123 S.Ct. 1848, 1853, 155 L.Ed. 877 (2003).

Langford has a heavy burden to sustain a challenge to his conviction based on a claim of ineffective assistance of appellate counsel.  *Munson v. Kapture*, 384 F.3d 310, 316 (6th Cir. 2004); *Whiting v. Burt*, 395 F.3d 602, 617 (6th Cir. 2005).  The constitutional standard to judge counsel's effectiveness under the Sixth Amendment is whether "counsel's representation 'fell below an objective standard of reasonableness,' . . . and . . . that counsel's deficient performance prejudiced the defendant."   *Roe v. Flores-Ortega*, 528 U.S. 470, 476-77, 120 S.Ct. 1029, 1034, 145 L.Ed.2d 925 (2000); *Strickland v. Washington*, 466 U.S. at 688.  The standard is clearly summarized by the Sixth Circuit.  In essence Langford must demonstrate that appellate counsel overlooked a winning argument:

> A defendant is entitled to effective assistance of counsel in connection with a defendant's first appeal of right. *Evitts v. Lucey*, 469 U.S. 387, 396, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985).  Yet appellate counsel need not raise every nonfrivolous argument on direct appeal.  *Jones v. Barnes*, 463 U.S. 745, 751-52, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983).  To be sure, "'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy.'  *Smith v. Murray*, 477 U.S. 527, 536, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986) (quoting *Jones*, 463 U.S. at 751-52, 103 S.Ct. 3308).  Appellate counsel, however, is required to exercise reasonable professional judgment.  *Jones*, 463 U.S. at 753, 103 S.Ct. 3308.  Nevertheless, "only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of [appellate] counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002) (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)).

*Joshua v. Dewitt*, 341 F.3d 430, 441 (6th Cir. 2003).

1:05 CV 1487 8

The state appellate court ruled that defense trial counsel had exercised strategy not to request instructions on the lesser included offenses of voluntary and involuntary manslaughter. Thus in effect the state court found no deficient performance in that regard the would warrant a prevailing argument on appeal.

Trial counsel had not performed unreasonably for appellate counsel to sustain a prevailing argument. First, voluntary manslaughter by definition requires "serious provocation occasioned by the victim" producing "sudden passion" or a "sudden fit of rage." See Ohio Rev. Code §2903.03(A). The evidence produced for trial showed that Langford and his co-defendants admitted in a statement to police to shooting at the white car . . . [and] stated that the white car's occupants began shooting first. *State v. Langford*, 2003 WL 125069 ¶10 (direct appeal).[2] Langford and his co-defendants stressed that they feared retaliation by the white car's occupants. This police statement and testimony were presented to establish self-defense.

"Fear alone is insufficient to demonstrate the kind of emotional state necessary to constitute sudden passion or fit of rage." *State v. Mack*, 82 Ohio St.3d 198, 201, 694 N.E.2d 1328 (1998). Langford produced no evidence that he acted under the influence of sudden passion or in a sudden fit of rage. Instead he maintained that he acted in response to an attack to protect himself. A voluntary manslaughter instruction would contradict the evidence presented of self-defense and is

---

[2] Under current Ohio law an instruction for voluntary manslaughter would be impermissible because the 13 year old victim did nothing to incite the attack. Transferred intent is not recognized. See *State v. Conway*, 108 Ohio St.3d 214, 238-39, 842 N.E.2d 996 (2006). Until recently, though, the question of transferred intent to a nonprovoking victim was unclear. Compare *State v. Solomon*, 66 Ohio St.2d 214, 421 N.E.2d 139, 20 O.O.3d 213 (1981) finding error where trial court refused voluntary manslaughter instruction in death of nonprovoking victim.

1:05 CV 1487 9

incompatible. See *State v. Collins*, 97 Ohio App.3d 438, 444-46, 646 N.E.2d 1142 (Ohio App. 8 Dist. 1994). This self-defense claim, if successful, would be exculpatory. Accordingly, trial counsel's performance was competent in not requesting an instruction which conflicted with the argument that Langford acted in self-defense, given both unquestionably the more beneficial exculpatory result that could be achieved under a self-defense theory, and the lack of evidence of rage and passion in Langford's version of events provided in his police statement.

Secondly, trial counsel also provided reasonably effective assistance in the decision not to request instruction on the lesser included offense of involuntary manslaughter. The crime requires proof of death, "as a proximate result of the offender's committing or attempting to commit a felony." See Ohio Rev. Code §2903.04. Involuntary manslaughter as defined under Ohio Rev. Code §2903.04 requires no *mens rea* and serves to punish unintentional homicide. See *Stanley v. Turner*, 6 F.3d 399 (6th Cir. 1993). "[T]he 'criminal intent as an element of . . . involuntary manslaughter is supplied by the criminal intent to do the underlying unlawful act of which the homicide is a consequence.'" *Stanley*, 6 F.3d 402, quoting *State v. Losey*, 23 Ohio App.3d 93, 491 N.E.2d 379 (1985).

An example of involuntary manslaughter is death resulting unintentionally from felonious assault. See *State v. Campbell*, 74 Ohio App.3d 352, 598 N.E.2d 1244 (1st Dist. 1991). No underlying felony was charged in Langford's case, but none is necessary under state law. See *State v. Elam*, 129 Ohio Misc.2d 26 (2004). However, to present an argument for the lesser included offense of involuntary manslaughter would place trial counsel in the position of arguing that the 13-

1:05 CV 1487                                              10

year old victim died as a result of Langford's commission of a felonious assault, or some other felony, which is entirely incompatible with a claim of self-defense. A key element of Ohio's self-defense rule is that the defendant was not at fault in creating the situation. See *State v. Williford*, 49 Ohio St.3d 247, 249, 551 N.E.2d 1279 (1990); *State v. Thomas*, 77 Ohio St.3d 323, 328-29, 673 N.E.2d 1339 (1997). Obviously Langford could not be both blameless and at fault for the death. Langford received reasonable performance from trial counsel, who opted for the exculpatory defense theory over arguing that his client was engaged in felonious criminal activity.

In sum, Langford has not shown that the state appellate court's conclusion with regard to the first ground was an objectively unreasonable application of *Strickland* and *Jones* in determining that appellate counsel's performance was not deficient.

*Ground Two:*

In his second ground, Langford contends that trial counsel was ineffective for failing to investigate and call a vital defense witness. There is some humor in this argument. The state appellate court pointed out in denying the state post-conviction petition that the proposed witness, Daryl Martin, would testify that he saw the three defendants running in the opposite direction immediately before the shooting started. This testimony, if presented, would directly contradict defendants' statements to the police and their testimony at trial. *State v. Langford*, 2004 WL 1057456 ¶24. The state appellate court did not refer to *Strickland* directly but instead referenced *State v. Coulter*, 75 Ohio App.3d 219, 230, 598 N.E.2d 1324 (1992), which cites the appropriate

1:05 CV 1487                                        11

federal standard under *Strickland* of reasonable performance in its discussion of reasonable defense trial tactics.

*Strickland* emphasized that review under the first part of the test for reasonable performance is conducted under the principle that "a strong presumption of counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Elaborating on this one aspect from *Strickland*, the Supreme Court explained:

> [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Wiggins v. Smith.*, 539 U.S. 510, 521-22; 123 S.Ct. 2527, 2535; 156 L.Ed.2d 471 (2003), quoting *Strickland*, 466 U.S. at 690-91.

It is not enough to convince a federal habeas court that in its independent judgment the state court decision was incorrect. Rather, Langford must show that the state decision applied *Strickland*'s standard to the facts of the case in an objectively unreasonable manner. See *Bell v. Cone*, 535 U.S. 685, 698-99, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Williams v. Taylor*, 529 U.S. 362, 409, 410, 120 S.Ct. 1495, 1521-22, 146 L.Ed.2d 389 (2000). *Wiggins v. Smith*, 539 U.S. at 520, 123 S.Ct. at 2534-35.

1:05 CV 1487                                                    12

Langford contends that trial counsel did not thoroughly investigate the matter in that counsel failed to interview this witness. Langford concedes in the petition that Daryl Martin was on the witness list (Petitioner's Writ of Habeas Corpus, Brief pg. 16, ECF #1). The undersigned has no way of determining whether or not defense counsel interviewed Mr. Martin but it is interesting that Langford in his discussion of this witness acknowledges the contradiction, engages in some speculation, and attempts to reconcile his version of the events with those of Mr. Martin. *Id.* Whether or not defense counsel did interview Mr. Martin, it is indeed fortunate that he did not put him on the stand. Langford has failed to show that an unreasonable investigation occurred. Defense counsel provided reasonable assistance when he did not put on a witness who would refute his client's testimony and the testimony of the other two co-defendants. Langford has not shown that the state court decision applied *Strickland* to the facts in an objectively unreasonable manner.

### *Ground Three:*

In his third ground Langford complains about the state court's allowing the prosecution's evidence of gang affiliation over defense objection. The state appellate court ruled:

> Frequently objecting to evidence showing that these shootings were gang related, counsel claims this evidence was character evidence used to show that defendant was a bad person. This court recently addressed this same issue in the appeal of one of defendant's co-defendants and ruled that 'the evidence regarding the gang affiliation had been introduced to establish motive, specifically that [co-defendant] Jones and his co-defendants caused Warren's death as a result of a gang-related shooting. As such, the gang references are permitted under Evid. R. 404(B). Therefore, the court did not abuse its discretion in admitting this evidence.. . .'

*State v. Langford*, 2003 WL 125069 ¶31.

1:05 CV 1487                                             13

The appellate court went on to state that there is nothing in the record that showed that Langford's defense counsel requested a limiting jury instruction concerning use of this evidence, for motive only, and overruled the assignment of error. *Id.*

It is well established that federal habeas corpus relief does not lie for errors of state law. See *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S.Ct. 3092, 3102, 111 L.Ed.2d 606 (1990); *Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 874-5, 79 L.Ed.2d 29 (1984); *Estelle v. McGuire*, 502 U.S. 62, 67, 112 S.Ct. 475, 479, 116 L.Ed.2d 385 (1991). Consequently, Langford must show that the admission of his gang involvement violated federal constitutional rights. *Estelle*, 502 U.S. at 67-68.

The state appellate court did not expressly apply a controlling federal standard, but this is excusable because there is no Supreme Court decision adjudicating a similar matter for the state decision to be "contrary to."

Precedent in the Sixth Circuit indicates that the due process question is evaluated under the application of the Federal Rules of Evidence. E.g. *Ferguson v. Knight*, 392 F.2d 581, 584 (6th Cir. 1986); *Clark v. O'Dea*, 257 F.3d 498, 502-503 (6th Cir. 2001). Fed. R. Evid. 404(b) and its state counterpart, Ohio Evid. R. 404(B), allow evidence of other crimes, wrongs or acts for the purpose of proving motive, opportunity, intent, preparation, plan, knowledge, identity or absence of a mistake or accident, but not to prove "character." In *Ferguson* the court found that the admission of evidence or prior conviction for trafficking in marijuana without limiting instruction or without request for limiting instruction did not deprive the petitioner of a fundamentally fair trial nor due

1:05 CV 1487                                            14

process under Fed. R. Evid. Rule 404(b).  In *Clark*, the court found that the evidence of petitioner's involvement in Satanism was offered for the proper purpose of motive and no constitutional violation existed, "because the trial court's determination that testimony about the defendants' Satanic beliefs was more probative than prejudicial appears reasonable and, therefore, far from an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  *Id.*, 257 F.3d at 503.

No court would find this state decision unreasonable.  The Ninth Circuit takes a hard view finding evidence of gang membership may not be introduced to prove intent or culpability.  See *Kennedy v. Lockyer*, 379 F.3d 1041, 1055 (9th Cir. 2004); *Mitchell v. Prunty*, 107 F.3d 1337, 1342-43 (9th Cir. 1997), *cert. denied*, 522 U.S. 913 (1997).  Even so, the Ninth Circuit recognizes that Rule 404(b) evidence relating to gang membership may be introduced as proof of motive, when there is a direct causal link between the gang membership and the reason behind the homicide.  See *U.S. v. Santiago*, 463 F.3d 885, 888-91 (9th Cir. 1995), *cert. denied*, 515 U.S. 1162 (1995) (evidence of defendant's desire to join a gang was properly introduced as motive to explain defendant's action of killing a stranger).[3]

---

[3] *U.S. v. Santiago* was recently cited as providing the rationale to the Ohio Supreme Court's decision in *State v. Drummond*, 111 Ohio St.3d 14, 26, 854 N.E.2d 1038, 1057-58, 2006 - Ohio - 5084 (2006).  The Ohio Supreme Court ruled that it was proper to introduce evidence of gang membership to establish motive of why a member of the Lincoln Knolls Crypts fired shots into another's home to retaliate for the murder of another gang member.  *Id.*

1:05 CV 1487                                              15

A strong illustration of the propriety of allowing gang evidence to establish motive exists in the Eighth Circuit's decision in *Pfau v. Ault*, 409 F.3d 933 (8th Cir. 2005), which confronted the Iowa Supreme Court's ruling in *State v. Nance*, 533 N.W.2d 555, 562 (Iowa 1995), that "evidence of gang membership and activity is inherently prejudicial." See *Pfau*, 409 F.3d at 937. The Eighth Circuit read the Iowa decision in *Nance* as limited to its specific facts (*Id.*, 409 F.3d at 940), and pointed to several decisions from Iowa courts where gang membership was relevant to show either motive or intent. (*Id*). Likewise a recent Ohio Supreme Court decision in *Drummond* (cited in note below) found evidence of gang affiliation was admissible to establish motive under circumstances similar to this case.

The question in habeas corpus review is not whether or not the state decision was correct but whether the result was an "unreasonable application" of clearly established federal law. "[A] federal habeas court may not issue a writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly. *Price v. Vincent*, 538 U.S. at 640-41, 123 S.Ct. at 853; *Bell v. Cone*, 535 U.S. at 698. Langford's gang membership was directly related to the reason for the shooting and consequently the result was not "objectively unreasonable."

Further, the second part of this argument concerning a limiting instruction can be expeditiously dismissed for lack of prejudice. Trial counsel had failed to request a limiting instruction, and arguably such an instruction should have been requested. However, the second prong of the *Strickland* standard is that counsel's deficient performance must have prejudiced the

1:05 CV 1487                                                            16

outcome. See *Strickland*, 466 U.S. at 688; *Roe*, 528 U.S. at 476-77. Langford cannot show prejudice.

The same reasoning applies to this argument when viewed from the standpoint of judicial error in omitting a limiting instruction. The harmless error rule applies in a habeas proceeding so that any error must raise grave doubt about whether trial error had a substantial and injurious effect or influence on a jury's verdict. *O'Neal v. McAnich*, 513 U.S. 432, 438-39, 115 S.Ct. 992, 995-96, 130 L.Ed.2d 947 (1995); *Brecht v. Abrahamson*, 507 U.S. 619, 638, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993); *Kotteakos v. U.S.*, 228 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946) (cited by *Brecht* and *O'Neal*). "While the burden of persuasion on harmless error review falls on a petitioner, he need not prove that the error was outcome-determinative; instead he must merely remove any assurances that the error did not affect the outcome." *Ruimveld v. Birkett*, 404 F.3d 1006, 1014 (6th Cir. 2005); *Beck v. Haik*, 377 F.3d 624, 635 (6th Cir. 2004); and see *Brecht*, 507 U.S. at 637. The lack of a limiting instruction on motive did not produce ambiguous instruction that affected the outcome of trial. See *Middleton v. McNeil*, 541 U.S. 433, 437, 124 S.Ct. 1830, 158 L.Ed.2d 701 (2004). (The question is whether there was a reasonable likelihood that the jury has applied the instruction in a way that violates the Constitution.). Accordingly, Langford has not carried any of his burdens with respect to his third ground, and if there was error, it assuredly did not affect the outcome of trial.

1:05 CV 1487                                17

*Ground Four:*

In his fourth ground, Langford alleged error by the trial court in not allowing him to submit instruction to the jury on lesser included offenses of negligent or reckless homicide. The state appellate court found that negligent homicide was not a lesser included offense of murder as it is defined under Ohio Revised Code §2903.05, but that reckless homicide was a lesser included offense. *State v. Langford*, 2003 WL 125069 ¶¶ 39-43. Nonetheless, the court concluded the instruction on reckless homicide was not warranted under the standard from *State v. Kidder,* that the court must "ascertain whether the jury could reasonably conclude that the evidence supports a conviction for the lesser offense and not the greater." *Id.*, 32 Ohio St.3d 279, 513 N.E.2d 311 (1987); cited at 2003 WL 125069 ¶37-38.

It is well established as a matter of state law that negligent homicide does not require purposeful intent and has consistently been held not to be a lesser included offense of either aggravated murder or murder. See *State v. Nelson*, 122 Ohio App.3d 309, 315, 701 N.E.2d 747 (1996); *State v. Grace*, 50 Ohio App.2d 259, 362 N.E.2d 1222; 4 O O.3d 223 (1976) (holding also that negligent homicide instruction would conflict with self-defense instruction and invite an unreasonable compromise on the evidence); *State v. Eubank*, 38 Ohio App.3d 141, 528 N.E.2d 1294 (1987); *State v. Jenkins*, 13 Ohio App.3d 122, 468 N.E.2d 387 (1983); and see *Brewer v. Overberg*, 624 F.2d 51, 53 (6th Cir. 1980), *cert. denied*, 449 U.S. 1085 (1981).

Ohio law permits a jury to find the defendant guilty of "other offenses . . . included within the offense charged," commonly known as the lesser included offenses, using the "elements"

1:05 CV 1487                                              18

approach. See Ohio Rev. Code §2945.74; *State v. Deem*, 40 Ohio St.3d 205, 533 N.E.2d 294 (1988); *State v. Kidder*, 32 Ohio St.3d 279, 513 N.E.2d 311 (1987) (modified in *Deem*); *State v. Thomas*, 40 Ohio St.3d 213, 533 N.E.2d 286 (1988), *cert. denied*, 493 U.S. 826 (1989). The Supreme Court has recognized that the states employ differing methods to define lesser included offenses such as the elements approach (used both in Ohio and federally), the cognate evidence approach, and the common proof approach. See *Hopkins v. Reeves*, 524 U.S. 88, 97 n. 6, 118 S.Ct. 1895, 141 L.Ed.2d 76 (1998). While negligent homicide is not a lesser included offense, it is a lesser *related* offense. See *Hopkins v. Reeves*, 524 U.S. at 97.

Ohio law does not permit instruction on lesser related offenses and the Supreme Court has held in *Hopkins* that, "[a]lmost all States . . . provide instructions only on these offenses that have been deemed to constitute lesser included offenses of the charged crime, [and] . . . [w]e have never suggested that the Constitution requires anything more." *Hopkins*, 524 U.S. at 96. Imposing a requirement to include lesser related offenses, the court explained "[s]uch a requirement is not only unprecedented, but also unworkable. Under such a scheme, there would be no basis for determining the offenses for which instructions are warranted." *Id.*, 524 U.S. at 97. Consequently, the results and reasoning of the state court decision with respect to the sought charge for negligent homicide neither contradicted nor was an unreasonable application of the pertinent federal law.

Next, the state appellate court did concede that reckless homicide (in contrast to negligent homicide) was a lesser included offense, but nonetheless opted not to instruct the jury on it under the state standard set forth in *State v. Kidder*, i.e., that the jury could reasonably conclude that the

evidence supports conviction for the lesser offense but not the greater. *Id.*, 32 Ohio St.3d at 282-83.

>Langford refers to *Beck v. Alabama,* which stated:
>
>>In the federal courts, it has long been 'beyond dispute that the defendant is entitled to an instruction on a lesser included offense if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater.' *Keeble v. United States* [412 U.S. 205, 208, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973).]
>
>*Id.*, 447 U.S. 625, 635, 100 S.Ct. 2382, 2388, 65 L.Ed.2d 392 (1980).

This *Keeble* standard repeated in *Beck* is equivalent of the standard set out in *Kidder*. Langford does not challenge the sufficiency of the evidence in his grounds and obviously the jury found the evidence did support a conviction for murder. Thus it is impossible at this point for Langford to demonstrate that the evidence only supported the conviction for the lesser offense and not the greater or as expressed in *Kidder,* or that the evidence would lead a rational jury to conclude that it must acquit the defendant of the greater offense as expressed in *Keeble* and *Beck.* Langford has not shown that the state decision was contrary to or an unreasonable application of clearly established federal law.

### *CONCLUSION AND RECOMMENDATION*

Following review of the petition and applicable law, Langford has not demonstrated that he is in custody pursuant to judgment of a State court which was the result of a decision that was contrary to or involved the unreasonable application of Federal law as determined by the Supreme Court of the United States or was the result of a decision based on an unreasonable determination

1:05 CV 1487                                                    20

of the facts in light of the evidence in the State court proceeding. See 28 U.S.C. §2254(d)(1) and (2). There has been no demonstrated need for an evidentiary hearing. It is recommended that the petitioner's application for habeas corpus be denied.

                                                    s/James S. Gallas
                                              United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of receipt of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).


Dated: December 5, 2006